

1  ANDRE BIROTTE JR.
   United States Attorney
2  LEON W. WEIDMAN, AUSA
   Chief, Civil Division
3  WENDY WEISS, AUSA
   Chief, Civil Fraud Section
4  HOWARD DANIELS, AUSA
   E-mail: Howard.Daniels@usdoj.gov
5  California State Bar No. 81764

6       Room 7516, Federal Building
        300 North Los Angeles Street
7       Los Angeles, CA 90012
        Ph: (213)894-4024; Fax: (213)894-5139

8

9  Attorneys for Plaintiff
   United States of America

10

11              UNITED STATES DISTRICT COURT

12         FOR THE CENTRAL DISTRICT OF CALIFORNIA

13
   UNITED STATES OF AMERICA,        )   NO CV11-10752 ODN (FFMX)
14                                   )
               Plaintiff,            )   COMPLAINT FOR
15                                   )   PERMANENT INJUNCTION
          v.                         )
16                                   )   [21 U.S.C. § 332]
   Titan Medical Enterprises,        )
17  Inc. d.b.a. U.S. Apothecary      )   [F.D.A.]
   Laboratories, Crown Labs, and     )
18  Vista Labs, a corporation, and   )
   James L. McDaniel, an             )
19  individual,                      )
                                     )
20             Defendants.           )
                                     )
21  _____ )

22       The United States of America, Plaintiff, by and through its

23  undersigned counsel, and on behalf of the United States Food and

24  Drug Administration ("FDA"), respectfully represents as follows:

25       1.    This statutory injunction proceeding is brought under

26  the Federal Food, Drug, and Cosmetic Act (the "Act"), 21 U.S.C.

27  § 332(a), to permanently enjoin Titan Medical Enterprises, Inc.

28  d.b.a. U.S. Apothecary Laboratories, Crown Labs, and Vista Labs,

a corporation, and James L. McDaniel, an individual (collectively, "Defendants") from:  (a) violating 21 U.S.C. § 331(a) by introducing or delivering, or causing to be introduced or delivered, into interstate commerce drugs that are adulterated within the meaning of 21 U.S.C. § 351(a)(2)(B);  (b) violating 21 U.S.C. § 331(k) by causing drugs that Defendants hold for sale after shipment of one or more of their components in interstate commerce to become adulterated within the meaning of 21 U.S.C. § 351(a)(2)(B);  (c) violating 21 U.S.C. § 331(a) by introducing or delivering, or causing to be introduced or delivered, into interstate commerce articles of food (dietary supplements) that are adulterated within the meaning of 21 U.S.C. § 342(g)(1);  (d) violating 21 U.S.C. § 331(k) by causing articles of food (dietary supplements) that Defendants hold for sale after shipment of one or more of their components in interstate commerce to become adulterated within the meaning of 21 U.S.C. § 342(g)(1); and (e) violating 21 U.S.C. § 331(d) by introducing or delivering, or causing to be introduced or delivered, into interstate commerce new drugs that are neither approved pursuant to 21 U.S.C. § 355, nor exempt from approval pursuant to 21 U.S.C. § 355(i).

2.    This Court has jurisdiction over the subject matter and all parties to this action under 28 U.S.C. §§ 1331, 1337, and 1345 and 21 U.S.C. § 332(a).

3.    Venue in this district is proper under 28 U.S.C. § 1391(b) and (c).

**Defendants**

4.    Defendant Titan Medical Enterprises, Inc. ("TME") d.b.a.
U.S. Apothecary Laboratories, Crown Labs, and Vista Labs, is
incorporated under the laws of the State of Wyoming.   TME is a
privately owned by Defendant James L. McDaniel.   TME
manufactures, processes, packs, labels, holds, and distributes
drugs and dietary supplements, for human use.   TME does business
at facilities located at 11100 Greenstone Avenue, Santa Fe
Springs, California 90670-4640, within the jurisdiction of this
Court.

5.    Defendant James L. McDaniel is the president and owner
of TME.   He has authority over all of the company's operations,
including, but not limited to, the manufacture, processing,
packing, labeling, holding, and distribution of TME's drugs and
dietary supplements.   He performs his duties at 11100 Greenstone
Avenue, Santa Fe Springs, California 90670-4640, within the
jurisdiction of this Court.

6.    Defendants have been and are now engaged in the
business of manufacturing, processing, packing, labeling,
holding, and distributing finished over-the-counter drug
products.   Defendants manufacture these drugs using components
that have been shipped in interstate commerce.   Such drug
products include guiafenesin, potassium iodide, and tetracycline
tablets, which are drugs within the meaning of 21 U.S.C.
§ 321(g).   Defendants ship their drug products outside the state
of California.   They also export some of their drugs outside of

3

the United States to countries that include Canada, Korea, and Japan.

7.   Defendants have been and are now engaged in the business of manufacturing, processing, packing, labeling, holding, and distributing dietary supplements.  Such products include Herbaltone, Hoodia/Garcinia, and psyllium, which are dietary supplements within the meaning of 21 U.S.C. § 321(ff). Except for the purposes of 21 U.S.C. §§ 321(g) and 350f, dietary supplements are deemed to be food under the Act.  21 U.S.C. § 321(ff).  Defendants manufacture their dietary supplements using components that they receive in interstate commerce. Defendants introduce their dietary supplements into interstate commerce for shipment outside the state of California.

## Defendants' Violations of the Act

### Drug Adulteration

8.   The Act requires drug manufacturers to operate in compliance with current good manufacturing practice for drugs ("Drug CGMP").  21 U.S.C. § 351(a)(2)(B).  The Act and FDA's Drug CGMP regulations, 21 C.F.R. pts. 210-211, mandate that manufacturers control the processes and procedures by which drugs are manufactured, processed, packed, and held in order to ensure that drugs have the identity, strength, quality, purity, and other attributes necessary for their safe and effective use. Drugs not made in conformance with Drug CGMP are deemed to be adulterated as a matter of law, regardless of whether they are deficient in any respect.  21 U.S.C. § 351(a)(2)(b); 21 C.F.R.

§ 210.1(b).

9.   Eight FDA inspections of Defendants' facility between 2001 and 2011 establish that the drugs manufactured and distributed by Defendants are adulterated within the meaning of 21 U.S.C. § 351(a)(2)(B) because the methods used in, and the facilities and controls used for, their manufacture, processing, packing, and holding are not in compliance with Drug CGMP.  21 C.F.R. pts. 210-211.

10.  FDA's most recent inspection of Defendants' facility took place between April 20 and June 16, 2011.  During that inspection, FDA investigators documented many significant deviations from Drug CGMP.  These observations include, but are not limited to, the following:

A.   Failure to follow written production and process control procedures in the execution of various production and process control functions and to record and justify any deviation from the procedures, as required by 21 C.F.R. § 211.100(b);

B.   Failure to establish and follow written procedures prescribing a system for reprocessing batches that do not conform to standards or specifications and the steps to be taken to ensure that the reprocessed batches will conform to all established standards, specifications, and characteristics, as required by 21 C.F.R. § 211.115(a);

C.   Failure to establish an adequate written testing program designed to assess the stability characteristics of drug products in order to determine appropriate storage conditions and

expiration dates, as required by 21 C.F.R. § 211.166(a);

       D.  Failure to establish and follow laboratory controls that include scientifically sound and appropriate specifications, standards, sampling plans, and test procedures designed to assure that components, drug product containers, closures, in-process materials, labeling, and drug products conform to appropriate standards of identity, strength, quality and purity, as required by 21 C.F.R. § 211.160(b);

       E.  Failure to establish and document the accuracy, sensitivity, specificity, and reproducibility of test methods employed by the firm, as required by 21 C.F.R. § 211.165(e);

       F.  Failure to establish and follow written control procedures to monitor the output and validate the performance of those manufacturing processes that may be responsible for causing variability in the characteristics of in-process material and the drug product, as required by 21 C.F.R. § 211.110(a);

       G.  Failure to maintain buildings used in the manufacture, processing, packing, or holding of drug products in a clean and sanitary condition, as required by 21 C.F.R. § 211.56(a);

       H.  Failure to establish and follow written procedures for cleaning and maintenance of equipment, including utensils, used in the manufacture, processing, preparing, packing, or holding of drug products, as required by 21 C.F.R. § 211.67(b); and

       I.  Failure of quality control personnel to review and

approve all drug product production and control records to
determine compliance with all established, written procedures
before a batch is released or distributed, as required by 21
C.F.R. § 211.192.

11.   In letters to FDA dated June 21 and 23, 2011, Defendant
James L. McDaniel represented that actions had been taken to
correct the Drug CGMP violations identified during FDA's April -
June 2011 inspection.  FDA reviewed the letters, however, and
determined that many of the firm's proposed corrective actions
are not adequate to fully address the Drug CGMP violations
observed during the inspection.

12.   Defendants violate 21 U.S.C. § 331(a) by introducing or
delivering for introduction into interstate commerce articles of
drug, as defined by 21 U.S.C. § 321(g)(1), that are adulterated
within the meaning of 21 U.S.C. § 351(a)(2)(B) in that they have
been manufactured, processed, packed, or held in violation of
Drug CGMP.  21 C.F.R. pts. 210-211.

13.   Defendants also violate 21 U.S.C. § 331(k) by causing
the adulteration, within the meaning of 21 U.S.C. § 351(a)(2)(B),
of articles of drug, as defined by 21 U.S.C. § 321(g)(1), while
such articles are held for sale after shipment of one or more of
their components in interstate commerce.

<u>Dietary Supplement Adulteration</u>

14.   The Act requires manufacturers of dietary supplements
to operate in compliance with current good manufacturing practice
for dietary supplements ("Dietary Supplement CGMP").  21 U.S.C.

§ 342(g)(1).  Manufacturing according to Dietary Supplement CGMP means that the manufacturing process incorporates a set of controls in the design and production processes to assure a quality finished product.  Dietary supplements not manufactured, prepared, packed, or held in conformance with Dietary Supplement CGMP are deemed to be adulterated.  21 U.S.C. § 342(g)(1).  The Dietary Supplement CGMP regulations are set forth at 21 C.F.R. Part 111.

15.  FDA's April - June 2011 inspection of TME established that the dietary supplements that Defendants manufacture and distribute are adulterated within the meaning of 21 U.S.C. § 342(g)(1), in that they were prepared, packed, and held in a manner that does not conform to Dietary Supplement CGMP. During the April - June 2011 inspection, FDA investigators documented many significant deviations from Dietary Supplement CGMP, which include, but are not limited to, the following:

A.  Failure to verify that a subset of finished dietary supplement batches meets product specifications for identity and strength, as required by 21 C.F.R. § 111.75(c);

B.  Failure to establish product specifications for the purity and composition of the finished batch of the dietary supplement, and for limits on those types of contamination that may adulterate, or that may lead to the adulteration of, the finished batch of the dietary supplement to ensure the quality of the dietary supplement, as required by 21 C.F.R. § 111.70(e);

8

C.   Failure to make and keep records of the documentation, in individual equipment logs, of the date of the use, maintenance, cleaning, and sanitizing of equipment, unless such documentation is kept with the batch record, as required by 21 C.F.R. § 111.35(b)(2);

D.   Failure to confirm the identity of components and to determine whether applicable component specifications are met, as required by 21 C.F.R. § 111.75(a)(2);

E.   Failure of quality control personnel to conduct a material review and make a disposition decision when a batch deviates from the master manufacturing record, as required by 21 C.F.R. § 111.113(a)(2);

F.   Failure of quality control personnel to conduct a material review and make a disposition determination that is based on a scientifically valid reason and approve reprocessing before the firm reprocesses dietary supplements, as required by 21 C.F.R. § 111.90(b)(1);

G.   Failure to include all required information in the written master manufacturing record, including the following: (1) a description of packaging and a representative label, or a cross-reference to the physical location of the actual or representative label, as required by 21 C.F.R. § 111.210(g); (2) written procedures for sampling and a cross-reference to procedures for tests or examinations, as required by 21 C.F.R. § 111.210(h)(2); and (3) written corrective action plans for use

9

when a specification is not met, as required by 21 C.F.R. § 111.210(h)(5).

16.   In letters to FDA dated June 21 and 23, 2011, Defendant James L. McDaniel represented that actions have been taken to correct the Dietary Supplement CGMP violations identified during FDA's April - June 2011 Inspection.  After reviewing Defendants' submission, FDA determined that many of their proposed corrective actions are inadequate to fully address the Dietary Supplement CGMP violations observed during FDA's inspection.

17.   Defendants violate 21 U.S.C. § 331(a) by introducing or delivering for introduction into interstate commerce articles of food (dietary supplements) that are adulterated within the meaning of 21 U.S.C. § 342(g)(1), in that they have been prepared, packed, and held under conditions that do not meet Dietary Supplement CGMP, 21 C.F.R. Part 111.

18.   Defendants also violate 21 U.S.C. § 331(k) by causing the adulteration, within the meaning of 21 U.S.C. § 342(g)(1), of articles of food (dietary supplements) while such articles are held for sale after shipment of one or more of their components in interstate commerce.

<u>Unapproved New Drugs</u>

19.   Defendants have a long history of violating 21 U.S.C. § 331(d) by introducing or delivering, or causing to be introduced or delivered, into interstate commerce new drugs that are neither approved pursuant to 21 U.S.C. § 355(a), nor exempt

from approval pursuant to 21 U.S.C. § 355(i).   Twice, in Warning Letters dated March 13, 2003 and December 18, 2007, FDA notified Defendants that they were illegally marketing an unapproved new drug.

20.   During FDA's most recent inspection, FDA investigators observed that Defendants continue to violate 21 U.S.C. § 331(d) by marketing the drug guaifenesin in 600 milligram enteric release tablets.   Defendants' 600 milligram enteric release guaifenesin drug product lacks an approved new drug application or approved abbreviated new drug application, as required by 21 U.S.C. § 355, and is not exempt from approval under 21 U.S.C. § 355(i).

21.   In addition, Defendants' 600 milligram enteric release guaifenesin drug product does not conform to any applicable over-the-counter ("OTC") drug monograph.   Specifically, Defendants' 600 milligram enteric release guaifenesin drug product does not conform to the OTC monograph for Cough, Cold, Allergy, Bronchodilator, and Antiasthmatic Drug Products, 21 C.F.R. Part 341, because the monograph does not provide for a single dose concentration above 400 milligrams.   See 21 C.F.R. § 341.78(d).

22.   Because Defendants' 600 milligram enteric release guaifenesin drug product lacks an approved new drug application or approved abbreviated new drug application, as required by 21 U.S.C. § 355, and was not exempt from approval under 21 U.S.C. § 355(i), Defendants' distribution of 600 milligram enteric

11

release guaifenesin drug products into interstate commerce violates 21 U.S.C. § 331(d).

## History of Violations

23.   Defendants have a long history of violating the Act. Several of the Drug CGMP deviations observed during the most recent inspection (referenced in ¶ 10 above) are the same as, or similar to, those observed by FDA during prior inspections in August 2010, February and July - August 2007, August 2005, August 2003, July 2002, and April - May 2001.   Several of the Dietary Supplement CGMP deviations (referenced in ¶ 15 above) are the same as, or similar to, those observed by FDA during the August 2010 inspection.

24.   FDA's inspections, and the large number of repeat violations observed, demonstrate Defendants' unwillingness to comply with the law.   For example, FDA documented TME's failure to establish laboratory methods that are appropriate and validated (similar to the violation described in ¶ 10(E) above) on at least four earlier occasions; TME's failure to adequately establish and control manufacturing procedures (similar to ¶ 10(F) above) on at least five previous occasions; and TME's failure to have an adequate stability testing program (similar to ¶ 10(C) above) on at least five prior occasions.   Numerous other Drug CGMP violations were also documented during at least three FDA inspections.

25.   TME's noncompliance has continued despite repeated

12

warnings from FDA.  At the close of each of FDA's eight inspections of TME conducted between 2001 and 2011, FDA Investigators issued a detailed list of Inspectional Observations ("Form FDA-483") to Dr. McDaniel or another TME representative detailing the deficiencies observed during the inspection.  In each case, TME responded to FDA personnel either orally or in writing with promises to correct at least some of the Drug CGMP violations.  Although Defendants made some corrections in response to FDA's inspection observations, they either did not follow through on their attempts to correct others or failed to sustain the corrections they made, as shown by the FDA Investigators' observation and documentation of ongoing, serious Drug CGMP violations on each successive inspection of Defendants' facility.

26.  FDA issued a Warning Letter to TME on December 18, 2007, detailing violations of the Drug CGMP regulations observed during FDA's inspection of the firm between July 18 and August 9, 2007.  At least four of the violations described in the letter are the same as, or similar to, the violations FDA observed in its April - June 2011 inspection.  The Warning Letter emphasized the serious nature of the violations and alerted TME that further regulatory action may result if the deficiencies were not corrected.

27.  In addition to the letter referenced in paragraph 26, FDA issued a Warning Letter to TME on March 13, 2003, alleging

that TME's drugs were adulterated because their operations did not comply with Drug CGMP.  Several of the Drug CGMP violations alleged in FDA's March 2003 Warning Letter are the same as or similar to the Drug CGMP violations listed in Paragraph 10 *supra*. Despite multiple inspections, written warnings by FDA, and Defendants' promises that violations would be remedied, the current Drug CGMP violations observed at Defendants' facility during the most recent FDA inspection are the same as, or similar to, prior violations observed by FDA and brought to the attention of Defendants.  Defendants' dietary supplement manufacturing operations are also not in compliance with the Dietary Supplement CGMP regulations, which became effective for manufacturers the size of TME on June 25, 2010.  Thus, Defendants continue to engage in practices that render their products adulterated.

28.  Based on the foregoing, Plaintiff believes that, unless restrained by this Court, Defendants will continue to violate the Act in the manner set forth above.

WHEREFORE, Plaintiff  respectfully requests that the Court:

I.  Permanently restrain and enjoin, under 21 U.S.C. § 332(a), Defendants, and each and all of their directors, officers, agents, representatives, employees, attorneys, successors, and assigns, and any and all persons in active concert or participation with any of them, from directly or indirectly doing or causing to be done any of the following acts:

a.  Violating 21 U.S.C. § 331(a), by introducing or

delivering, or causing to be introduced or delivered, into interstate commerce drugs that are adulterated within the meaning of 21 U.S.C. § 351(a)(2)(B);

b.  Violating 21 U.S.C. § 331(k), by causing drugs that Defendants hold for sale after shipment of one or more of their components in interstate commerce to become adulterated within the meaning of 21 U.S.C. § 351(a)(2)(B);

c.  Violating 21 U.S.C. § 331(a), by introducing or delivering, or causing to be introduced or delivered, into interstate commerce dietary supplements that are adulterated within the meaning of 21 U.S.C. § 342(g)(1);

d.  Violating 21 U.S.C. § 331(k), by causing dietary supplements that Defendants hold for sale after shipment of one or more of their components in interstate commerce to become adulterated within the meaning of 21 U.S.C. § 342(g)(1); and

e.  Violating 21 U.S.C. § 331(d) by introducing or delivering, or causing to be introduced or delivered, into interstate commerce new drugs that are neither approved pursuant to 21 U.S.C. § 355, nor exempt from approval pursuant to 21 U.S.C. § 355(i).

II.  Permanently restrain and enjoin, under 21 U.S.C. § 332(a), Defendants, and each and all of their directors, officers, agents, representatives, employees, attorneys, successors, and assigns, and any and all persons in active concert or participation with any of them, from manufacturing,

processing, packing, labeling, holding, or distributing drugs and/or dietary supplements, unless and until Defendants' methods, facilities, and controls used to manufacture, process, pack, label, and hold drugs and dietary supplements are established, operated, and administered in conformity with Drug CGMP and Dietary Supplement CGMP, respectively, and the Act, in a manner that has been found acceptable by FDA.

III. Order that FDA be authorized pursuant to this injunction to inspect Defendants' place(s) of business and all records relating to the receipt, manufacture, processing, packing, labeling, holding, and distribution of any drug or dietary supplement to ensure continuing compliance with the terms of the injunction, the costs of such inspections to be borne by Defendants at the rates prevailing at the time the inspections are accomplished.

IV.  Order that Plaintiff be awarded costs and other such relief as the Court deems just and proper.

Respectfully submitted,

ANDRÉ BIROTTE JR.
United States Attorney
LEON W. WEIDMAN
Assistant U.S. Attorney
Chief, Civil Division
WENDY WEISS
Assistant U.S. Attorney
Chief, Civil Fraud Section

HOWARD DANIELS
Assistant U.S. Attorney

Attorneys for Plaintiff
United States of America

OF COUNSEL:

WILLIAM B. SCHULTZ
Acting General Counsel
United States Department of
Health and Human Services

ELIZABETH H. DICKINSON
Acting Chief Counsel
Food and Drug Division

ERIC M. BLUMBERG
Deputy Chief Counsel
for Litigation

MICHAEL D. HELBING
Assistant Chief Counsel
United States Department of
Health and Human Services
Office of the General Counsel
Food and Drug Administration

17

PROOF OF SERVICE BY MAILING

I am over the age of 18 and not a party to the within action.  I am employed by the Office of United States Attorney, Central District of California.  My business address is 300 North Los Angeles Street, Suite 7516 Los Angeles, California 90012.

On December 28, 2011, I served COMPLAINT FOR PERMANENT INJUNCTION on each person or entity named below by enclosing a copy in an envelope addressed as shown below and placing the envelope for collection and mailing on the date and at the place shown below following our ordinary office practices.  I am readily familiar with the practice of this office for collection and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.

Date of mailing: December 28, 2011.  Place of mailing: Los Angeles, California.  (SEE ATTACHED SERVICE LIST)

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on: December 28, 2011 at Los Angeles, California.

ROSALIN R. DAVIS

1

2

**SERVICE LIST**

3    James L. McDaniel, President
     TME Enterprises, Inc. dba U.S. Apothecary
4    Laboratories, Crown Labs, and Vista Labs
     11100 Greenstone Avenue
5    Santa Fe Springs, CA 90670-4640

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Otis D. Wright II and the assigned discovery Magistrate Judge is Frederick F. Mumm.

The case number on all documents filed with the Court should read as follows:

## CV11- 10752 ODW (FFMx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division** | [ ] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

Name & Address:Andre Birotte Jr., U.S. Attorney
Howard Daniels, AUSA - State Bar No. 81764
U.S. Attorney's Office-300 N. Los Angeles Street,
Suite 7516, Los Angeles, CA 90012



## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

United States of America,

PLAINTIFF(S)

v.

Titan Medical Enterprises, Inc. dba U.S. Apothecary
Laboratories, Crown Labs, and Vista Labs, a
corporation, and James L. McDaniel, an individual

DEFENDANT(S).

CASE NUMBER

CV11-10752 ODW(FFMx)

**SUMMONS**

TO:     DEFENDANT(S):

A lawsuit has been filed against you.

Within   21   days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney,  Howard Daniels _____, whose address is  300 N. Los Angeles Street, Suite 7516, Los Angeles, CA 90012 _____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

DEC 2 8 2011

Clerk, U.S. District Court

**JULIE PRADO**

Dated: _____

By: _____

Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

**COPY**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| United States of America | Titan Medical Enterprises, Inc. dba U.S. Apothecary Laboratories, Crown Labs, and Vista Labs, a corporation, and James L. McDaniel, an individual |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Howard Daniels<br>U.S. Attorneys Office<br>300 N. Los Angeles Street, Suite 7516, Los Angeles, CA 90012 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☒ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify):
☐ 6 Multi-District Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☒ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No  ☐ **MONEY DEMANDED IN COMPLAINT: $**_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

21 U.S.C. § 332 (a) to enjoin violation of F.D.A. Act

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 540 Mandamus/ Other | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | **FORFEITURE / PENALTY** | ☐ 820 Copyrights |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | **SOCIAL SECURITY** |
| ☒ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **IMMIGRATION** | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 245 Tort Product Liability | | | | |
| | ☐ 290 All Other Real Property | | | | |

**CV11-10752**

FOR OFFICE USE ONLY: Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)  CIVIL COVER SHEET  Page 1 of 2

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

VIII(a).  IDENTICAL CASES:  Has this action been previously filed in this court and dismissed, remanded or closed?  ☒No   ☐ Yes
If yes, list case number(s): _____

VIII(b).  RELATED CASES:  Have any cases been previously filed in this court that are related to the present case?  ☒No   ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)   ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
                               ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
                               ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
                               ☐ D.  Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

IX. VENUE:  (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☒   Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  |  |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| **Los Angeles County** |  |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| **Los Angeles County** |  |

\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land  condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER):  _____   Date   12-28-11

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings
or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed
but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |