STUART F. DELERY
Acting Assistant Attorney General
MAAME EWUSI-MENSAH FRIMPONG
Deputy Assistant Attorney General
MICHAEL S. BLUME
Director
TIMOTHY T. FINLEY
Trial Attorney
Consumer Protection Branch
P.O Box 386
Washington, D.C. 20036
Ph: (202) 307-0050

ANDRÉ BIROTTE, JR.
United States Attorney
LEON W. WEIDMAN, AUSA
Chief, Civil Division
WENDY WEISS, AUSA
Chief, Civil Fraud Section
HOWARD DANIELS, AUSA
Email: Howard.Daniels@usdoj.gov
CA Bar No. 81764
Room 7516, Federal Building
300 N. Los Angeles Street
Los Angeles, CA 90012
Ph: (213) 894-4024; Fax: (213) 894-5139

Attorneys for Plaintiff
United States of America

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>vs.<br><br>Titan Medical Enterprises, Inc. d.b.a., US Apothecary Laboratories, Crown Labs, and Vista Labs, a corporation, and James L. McDaniel, an individual,<br>    Defendants. | CV 11-10752 ODW(FFMx)<br>ORDER GRANTING<br>PLAINTIFF'S MOTION<br>FOR PERMANENT INJUNCTION<br>[REVISED] |

The Court, having considered Plaintiff's Motion for Summary Judgment and supporting documents, the opposition memorandum submitted by Titan Medical Enterprises, Inc., a corporation, and James L. McDaniel, an individual (collectively, "Defendants"), and the entire record in this case; having found that Defendants (1) have distributed articles of drug that were adulterated within the meaning of 21 U.S.C. § 351(a)(2)(B); (2) have adulterated articles of drug,

ORDER GRANTING MOTION FOR PERMANENT INJUNCTION - 1

within the meaning of 21 U.S.C. § 351(a)(2)(B), while they were held for sale after shipment of one or more of their components in interstate commerce; (3) have distributed articles of food (dietary supplements) that were adulterated within the meaning of 21 U.S.C. § 342(g); (4) have adulterated articles of food (dietary supplements), within the meaning of 21 U.S.C. § 342(g), while they were held for sale after shipment of one or more of their components in interstate commerce; and (5) have introduced or delivered, or caused to be introduced or delivered, into interstate commerce new drugs that were not approved under 21 U.S.C. § 355; and having found that Defendants have violated and, unless restrained by order of this Court, will continue to violate the Federal Food, Drug, and Cosmetic Act ("the Act"), 21 U.S.C. § 331(a), (d), and (k),

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

1. This Court has jurisdiction over the subject matter and over all parties to this action.

2. The Complaint for Permanent Injunction states a cause of action against Defendants under the Federal Food, Drug, and Cosmetic Act ("FDCA" or the "Act").

3. Defendants violate 21 U.S.C. § 331(a) by introducing or delivering, or causing to be introduced or delivered, into interstate commerce drugs that are adulterated within the meaning of 21 U.S.C. § 351(a)(2)(B) in that they have been manufactured, processed, packed, and held in violation of current good manufacturing practice for drugs ("Drug CGMP"), 21 C.F.R. pts. 210-211.

4. Defendants violate 21 U.S.C. § 331(k) by causing drugs that Defendants hold for sale after shipment of one or more of their components in interstate commerce to become adulterated within the meaning of 21 U.S.C. § 351(a)(2)(B).

5. Defendants violate 21 U.S.C. § 331(a) by introducing or delivering, or causing to be introduced or delivered, into interstate commerce dietary supplements, as defined by 21

U.S.C. § 321(ff), that are adulterated within the meaning of 21 U.S.C. § 342(g)(1) in that they have been prepared, packed, and held under conditions that do not comply with current good manufacturing practice regulations for dietary supplements ("Dietary Supplement CGMP"), 21 C.F.R. pt. 111.

6. Defendants violate 21 U.S.C. § 331(k) by causing dietary supplements that Defendants hold for sale after shipment of one or more of their components in interstate commerce to become adulterated within the meaning of 21 U.S.C. § 342(g)(1).

7. Defendants violate 21 U.S.C. § 331(d) by introducing or delivering, or causing to be introduced or delivered, into interstate commerce new drugs, as defined by 21 U.S.C. § 321(p), that are neither approved pursuant to 21 U.S.C. § 355(a), nor exempt from approval pursuant to 21 U.S.C. § 355(i).

8. Upon entry of this Order, Defendants and each and all of their directors, officers, agents, representatives, employees, attorneys, successors and assigns, and any and all persons or entities in active concert or participation with any of them who have received actual notice of this Order by personal service or otherwise (collectively, "Associated Persons") are permanently restrained and enjoined under 21 U.S.C. § 332(a) from directly or indirectly doing or causing to be done any or all of the following acts:

    A. Violating 21 U.S.C. § 331(a), by introducing or delivering, or causing to be introduced or delivered, into interstate commerce drugs that are adulterated within the meaning of 21 U.S.C. § 351(a)(2)(B) or food that is adulterated within the meaning of 21 U.S.C. § 342(g)(1);

    B. Violating 21 U.S.C. § 331(k), by causing drugs that Defendants hold for sale after shipment of one or more of their components in interstate commerce to become

ORDER GRANTING MOTION FOR PERMANENT INJUNCTION - 3

adulterated within the meaning of 21 U.S.C. § 351(a)(2)(B) or by causing food that Defendants hold for sale after shipment of one or more of its components in interstate commerce to become adulterated within the meaning of 21 U.S.C. § 342(g)(1); and/or

   C. Violating 21 U.S.C. § 331(d), by introducing or delivering, or causing to be introduced or delivered, into interstate commerce new drugs that are neither approved pursuant to 21 U.S.C. § 355(a), nor exempt from approval pursuant to 21 U.S.C. § 355(i).

  9. Upon entry of this Order, Defendants and each and all of their Associated Persons are permanently restrained and enjoined under 21 U.S.C. § 332(a) from directly or indirectly manufacturing, processing, packing, labeling, holding, or distributing any drug or dietary supplement at or from the facility located at 11100 Greenstone Avenue, Santa Fe Springs, California 90670-4640 ("Defendants' facility") or at any other location, unless and until:

Drug CGMP

   A. Defendants' methods, facilities, and controls used to manufacture, process, pack, label, and hold drugs are established, operated, and administered in compliance with this Order, the Act, and the Act's implementing regulations;

   B. Defendants retain, at Defendants' expense, an independent person or persons (the "Drug CGMP Expert"), who is without any personal or financial ties (other than the retention agreement) to Defendants and their families, and who, by reason of background, training, education, or experience, is qualified to inspect Defendants' drug manufacturing operations to determine whether the methods, facilities, and controls are operated and administered in conformity with Drug CGMP. Defendants shall notify the Food and Drug Administration ("FDA") in writing of the identity and qualifications of the Drug CGMP Expert as soon as they retain such expert;

   C. The Drug CGMP Expert shall perform a comprehensive inspection of Defendants' facility and the method and controls used to manufacture, process, pack, label, and hold drugs, and certify in writing to FDA that (1) he or she has inspected Defendants'

facility, methods, processes, and controls; and (2) whether Defendants' operations are, in the Drug CGMP Expert's opinion, in compliance with 21 U.S.C. § 351(a)(2)(B), 21 C.F.R. pts. 210-211, and this Order. The Drug CGMP Expert's report of the inspection, which shall be submitted to FDA, shall include, but not be limited to, the following:

      i. An evaluation of Defendants' current state of compliance with respect to the deviations set forth on FDA's Lists of Inspectional Obervations issued to Defendants since May 2, 2001;

      ii. A determination of whether the accuracy, sensitivity, specificity, and reproducibility for all test methods used by Defendants have been established and documented, as required by 21 C.F.R. § 211.165(e);

      iii.    An evaluation of whether Defendants have established and implemented a comprehensive written Quality Assurance ("QA")/Quality Control ("QC") program that is adequate to ensure continuous compliance with the Act, its implementing regulations, and this Order. The QA/QC program shall include procedures to ensure that Defendants:

      a.    Follow written production and process control procedures in the execution of production and process control functions and to record and justify any deviation from the procedures, as required by 21 C.F.R. § 211.100(b);

      b.    In a timely manner, thoroughly investigate: (a) product deviations; (b) reports of complaints regarding Defendants' products; and (c) any unexplained discrepancy or the failure of a batch of drug or any of its components to meet any of the product's or component's specifications, including the extension of such investigation to other batches of the same drug and other drugs that may have been associated with the specific failure or discrepancy; and to take required and timely corrective actions for all products and components that fail to meet their specifications, as required by 21 C.F.R. § 211.192(b) and 21 C.F.R. § 211.198;

      iv.    An evaluation of whether Defendants have established an adequate written testing program designed to assess the stability characteristics of drug products

ORDER GRANTING MOTION FOR PERMANENT INJUNCTION - 5

in order to determine appropriate storage conditions and expiration dates, as required by 21 C.F.R. § 211.166(a);

     v. A determination of whether Defendants have established and are following laboratory controls that include scientifically sound and appropriate specifications, standards, sampling plans, and test procedures designed to assure that components, drug product containers, closures, in-process materials, labeling, and drug products conform to appropriate standards of identity, strength, quality and purity, as required by 21 C.F.R. § 211.160(b);

     vi. An assessment of Defendants' written control procedures for monitoring the output and validating the performance of those manufacturing processes that may contribute to causing variability in the characteristics of in-process material and the drug product, as required by 21 C.F.R. § 211.110(a);

     vii. A determination of whether Defendants have established and are following written procedures for cleaning and maintenance of equipment, including utensils, used in the manufacture, processing, preparing, packing, or holding of drug products, as required by 21 C.F.R. § 211.67(b); and

     viii. An evaluation of whether Defendants' QC unit reviews and approves all drug product production and control records to determine compliance with all established, written procedures before a batch is released or distributed, as required by 21 C.F.R. § 211.192.

Dietary Supplement CGMP

  D. Defendants retain, at Defendants' expense, an independent person or persons (the "Dietary Supplement CGMP Expert"), who is without any personal or financial ties (other than the retention agreement) to Defendants and their families, and who, by reason of background, training, education, or experience, is qualified to inspect Defendants' facility to determine whether the facility, methods, processes, and controls are operated and administered in conformity with CGMP, 21 C.F.R. Part 111.  Defendants, if they choose, may retain as the Dietary Supplement CGMP Expert the same independent party they retained as the Drug CGMP

Expert. Defendants shall notify FDA in writing of the identity and qualifications of the Dietary Supplement CGMP Expert as soon as they retain such expert;

   E. The Dietary Supplement CGMP Expert shall perform a comprehensive inspection of Defendants' facility and the method and controls used to manufacture, prepare, pack, label, and hold dietary supplements, and certify in writing to FDA that (1) he or she has inspected Defendants' facility, methods, processes, and controls; and (2) whether Defendants' operations are, in the Dietary Supplement CGMP Expert's opinion, in compliance with 21 U.S.C. § 342(g)(1), 21 C.F.R. pt. 111, and this Order. The Dietary Supplement CGMP Expert's report of the inspection, which shall be submitted to FDA, shall include, but not be limited to, the following:

    i. A certification that a subset of Defendants' finished dietary supplement batches, identified by a sound statistical sampling plan, meets product specifications for identity, purity, strength, composition, and for limits on those types of contamination that may adulterate, or that may lead to adulteration of, the finished batch of the dietary supplement, as required by 21 C.F.R. § 111.75(c);

    ii. A determination of whether Defendants have established product specifications for the identity, purity, strength, and composition for the finished batch of each dietary supplement that they make, and for limits on those types of contamination that may adulterate, or that may lead to the adulteration of, the finished batch of the dietary supplement to ensure the quality of the dietary supplement, as required by 21 C.F.R. § 111.70(e);

    iii. An evaluation of whether Defendants make and keep records, in individual equipment logs, of the date of the use, maintenance, cleaning, and sanitizing of equipment, unless such documentation is kept with the batch record, as required by 21 C.F.R. § 111.35(b)(2);

    iv. An evaluation of whether Defendants comply with the requirements of 21 C.F.R. § 111.75(a) to determine whether component specifications are met;

    v. A determination of whether Defendants have implemented written procedures to ensure that their QC personnel conduct a material review and make a

disposition decision if a batch deviates from the master manufacturing record, including, but not limited to, when any step established in the master manufacturing record is not completed and all deviations from specifications, as required by 21 C.F.R. § 111.113(a)(2);

      vi. A determination of whether Defendants' QC personnel conduct a material review and make a disposition determination that is based on a scientifically valid reason and approve reprocessing before the firm reprocesses dietary supplements, as required by 21 C.F.R. § 111.90(b)(1);

      vii. An assessment of whether Defendants include all required information in the written master manufacturing record, as required by 21 C.F.R. § 111.210;

      viii. An assessment of whether Defendants include all required information in their batch production records, as required by 21 C.F.R. § 111.260.

<u>General Provisions</u>

  F. Defendants have destroyed in accordance with the procedures provided in paragraph 10 all drugs and dietary supplements in their possession, custody, or control that fail to comply with all of the requirements of 21 U.S.C. § 38l(e)(1) and 21 C.F.R. § 1.101;

  G. Defendants have reported to FDA in writing the actions they have taken to:

    i. correct the Drug CGMP deviations and Dietary Supplement CGMP deviations brought to Defendants' attention by FDA, the Drug CGMP Expert, the Dietary Supplement CGMP Expert, and any other source;

    ii. ensure that the methods used in, and the facilities and controls used for, manufacturing, processing, packing, labeling, holding, and distributing drugs are operated and will be continuously administered in conformity with Drug CGMP; and

    iii. ensure that the methods used in, and the facilities and controls used for, manufacturing, processing, packing, labeling, holding, and distributing dietary supplements are operated and will be continuously administered in conformity with Dietary Supplement CGMP;

ORDER GRANTING MOTION FOR PERMANENT INJUNCTION - 8

          H.      FDA representatives have inspected Defendants' facility to determine whether the requirements of this Order have been met and whether Defendants are operating in conformity with the Act, its implementing regulations, and this Order; and

          I.      FDA notifies Defendants in writing that they appear to be in compliance with the requirements set forth in paragraphs 9(A)-(G) of this Order. In no circumstance shall FDA's silence be construed as a substitute for written notification.

10. Within fifteen (15) calendar days after the entry of this Order, Defendants, under FDA's supervision, shall destroy all drugs and dietary supplements that are in Defendants' possession, custody, or control and that fail to comply with all of the requirements of 21 U.S.C. § 38l(e)(1) and 21 C.F.R. § 1.101. Defendants shall bear the costs of destruction and the costs of FDA's supervision. Defendants shall not dispose of any drugs or dietary supplements in a manner contrary to the provisions of the Act, any other federal law, or the laws or any State or Territory, as defined in the Act, in which the drugs or dietary supplements are disposed.

11. The terms of paragraph 9 shall not prohibit Defendants from manufacturing, preparing, processing, packing, labeling, holding, and/or distributing a drug or dietary supplement that was never sold or offered for sale in domestic commerce and that is intended solely for export from the United States, provided that any such drug or dietary supplement complies with all of the requirements of 21 U.S.C. § 38l(e)(1) and 21 C.F.R. § 1.101.

12. After Defendants have complied with paragraphs 9(A)-(G) and have received FDA's written notification pursuant to paragraph 9(I), Defendants shall retain an independent person or persons who shall meet the criteria described in paragraphs 9(B) and 9(D) to conduct audit inspections of Defendants' facility no less frequently than once every six (6) months for a period of no less than five (5) years (hereinafter, the "Auditor"). The first audit shall occur not more than six months after Defendants have received FDA's written notification pursuant to paragraph 9(I). If Defendants choose, the Auditor may be the same person or persons retained as the Drug CGMP Expert described in paragraph 9(B) and/or the Dietary Supplement CGMP Expert described in paragraph 9(D).

A. At the conclusion of each audit inspection, the Auditor shall prepare a detailed written audit report ("Audit Report") analyzing whether Defendants are in compliance with Drug CGMP and Dietary Supplement CGMP for their drug and dietary supplement operations respectively and identifying any deviations from such requirements ("Audit Report Observations"). As a part of every Audit Report, the Auditor shall assess the adequacy of corrective actions taken by Defendants to correct all previous Audit Report Observations. The Audit Reports shall be delivered contemporaneously to Defendants and FDA by courier service or overnight delivery service, no later than fifteen (15) business days after the date the Audit Inspection is completed. In addition, Defendants shall maintain the Audit Reports in separate files at Defendants' facility and shall promptly make the Audit Reports available to FDA upon request.

B. If an Audit Report contains any observations indicating that Defendants' drugs are not in compliance with Drug CGMP and/or that Defendants' dietary supplements are not in compliance with the Dietary Supplement CGMP, Defendants shall, within fifteen (15) calendar days after receipt of the Audit Report, correct those observations, unless FDA notifies Defendants that a shorter time period is necessary. If, after receiving the Audit Report, Defendants believe that correction of the deviations will take longer than fifteen (15) calendar days, Defendants shall, within ten (10) calendar days of receipt of the Audit Report, submit to FDA in writing a proposed schedule for completing corrections ("Audit Correction Schedule"). The Audit Correction Schedule must be reviewed and approved by FDA in writing prior to implementation by Defendants. In no circumstance shall FDA's silence be construed as a substitute for written approval. Defendants shall complete all corrections according to the approved Audit Correction Schedule. Immediately upon correction, Defendants shall submit documentation of their corrections to the Auditor. Within thirty (30) calendar days after the Auditor's receipt of Defendants' documentation of corrections, unless FDA notifies Defendants that a shorter time period is necessary, or within the time period provided in a correction schedule approved by FDA, the Auditor shall review the actions taken by Defendants to correct the Audit Report Observations. Within five (5) business days of beginning that review, the

Auditor shall report in writing to FDA whether each of the Audit Report Observations has been corrected and, if not, which Audit Report Observations remain uncorrected.

13. If at any time after entry of this Order, FDA determines, based on the results of an inspection, the analysis of a sample, a report, or data prepared or submitted by Defendants, the Drug CGMP Expert, the Dietary Supplement CGMP Expert, the Auditor, or any other information, that Defendants have failed to comply with any provision of this Order, have violated the Act, or its implementing regulations, or that additional corrective actions are necessary to achieve compliance with this Order, the Act, or its implementing regulations, FDA may, as and when it deems necessary, notify Defendants in writing of the noncompliance and order Defendants to take appropriate corrective action, including, but not limited to, ordering Defendants to immediately take one or more of the following actions:

    A. Cease manufacturing, processing, packing, labeling, holding, or distributing any or all drugs and/or dietary supplements;

    B. Recall, at Defendants' expense, any drug that is unapproved or any drug or dietary supplement that in FDA's judgment is adulterated or otherwise in violation of this Order, the Act, or its implementing regulations;

    C. Revise, modify, expand, or continue to submit any reports or plans prepared pursuant to this Order;

    D. Submit additional reports or information to FDA as requested;

    E. Assess liquidated damages, as provided by Paragraph 22 of this Order;

    F. Issue a safety alert; and/or

    G. Take any other corrective actions as FDA, in its discretion, deems necessary to bring Defendants into compliance with this Order, the Act, or its implementing regulations.

This remedy shall be separate and apart from, and in addition to, any other remedy available to the United States under this Order or under the law.

14. Any order issued by FDA under Paragraph 13 shall be issued by FDA's Los Angeles District Director, or a person acting in that capacity, and shall specify the deficiencies or

failures giving rise to the order.  The following process and procedures apply when FDA issues an order under Paragraph 13, except as provided in subparagraph (D) below:

  A. Unless a different time frame is specified by FDA in its order, within ten (10) calendar days after receiving an order under Paragraph 13, Defendants shall notify FDA in writing either that: (1) Defendants are undertaking or have undertaken corrective action, in which event Defendants also shall describe the specific actions taken or to be taken and the proposed schedule for completing the action(s); or (2) Defendants do not agree with FDA's order. If Defendants notify FDA that they do not agree with FDA's order, Defendants shall explain in detail and in writing the basis for their disagreement; in so doing, Defendants also may propose specific alternative actions and specific time frames for achieving FDA's objectives;

  B. If any Defendant notifies FDA that he does not agree with FDA's order, FDA will review Defendants' notification and thereafter, in writing, affirm, modify, or withdraw its order, as FDA deems appropriate. If FDA affirms or modifies its order, it shall explain the basis for its decision in writing. This written notification shall constitute final agency action;

  C. If FDA affirms or modifies its order, Defendants shall, upon receipt of FDA's order, immediately implement the order (as modified, if applicable), and, if they so choose, bring the matter before this Court.  Defendants shall continue to diligently implement FDA's order while the matter is before the Court and unless and until the Court reverses, stays, or modifies FDA's order.  Any review of FDA's decision under this paragraph shall be made in accordance with the terms set forth in Paragraph 24 of this Order;

  D. The process and procedures set forth in Paragraphs 14(A)-(C) shall not apply to any order issued under Paragraph 13 if such order states that, in FDA's judgment, the matter raises significant public health concerns.  In such case, Defendants shall immediately and fully comply with the terms of that order.  Should Defendants seek to challenge any such order, they may petition this Court for relief.

 15. Representatives of FDA shall be permitted, without prior notice and as and when FDA deems necessary, to inspect Defendants' places of business, and without prior notice, and take any other measures necessary to monitor and ensure continuing compliance with the terms

of this Order.  During inspections, FDA representatives shall be permitted to:  have immediate access to buildings, equipment, raw ingredients, in-process materials, finished products, containers, packaging material, labeling, and other material therein; take photographs and make video recordings; take samples of Defendants' raw ingredients, in-process materials, finished products, containers, packaging material, labeling, and other material; and examine and copy all records relating to the manufacture, processing, packing, labeling, holding, and distribution of any and all drugs, dietary supplements, and their components.  The inspections shall be permitted upon presentation of a copy of this Order and appropriate credentials.  The inspection authority granted by this Order is separate from, and in addition to, the authority to make inspections under the Act, 21 U.S.C. § 374.

16.     Defendants shall reimburse FDA for the costs of all FDA inspections, investigations, supervision, analyses, examinations, and reviews that FDA deems necessary to evaluate Defendants' compliance with any part of this Order at the standard rates prevailing at the time the costs are incurred.  As of the date this Order is proposed, these rates are: $87.57 per hour or fraction thereof per representative for inspection and investigative work; $104.96 per hour or fraction thereof per representative for analytical or review work; $0.555 per mile for travel expenses by automobile; government rate or the equivalent for travel by air or other means; and the published government per diem rate for subsistence expenses where necessary.  In the event that the standard rates applicable to FDA supervision of court-ordered compliance are modified, these rates shall be increased or decreased without further order of the Court.

17.     Within ten (10) calendar days after the entry of this Order, Defendants shall post a copy of this Order in a common area at Defendants' facility and at any other location at which Defendants conduct business and shall ensure that the Order remains posted for as long as the Order remains in effect.

18.     Within ten (10) calendar days of the date of entry of this Order, Defendants shall provide a copy of the Order by personal service or certified mail (return receipt requested) to each and all of their Associated Persons.  Within thirty (30) calendar days of the date of entry of this Order, Defendants shall provide to FDA an affidavit stating the fact and manner of their

compliance with this paragraph, identifying the names, addresses, and positions of all persons who have received a copy of this Order.

19. In the event that any of the Defendants becomes associated with any additional Associated Person(s) at any time after entry of this Order, Defendants immediately shall provide a copy of this Order, by personal service or certified mail (restricted delivery, return receipt requested), to such Associated Person(s). Within ten (10) calendar days of each time any of the Defendants becomes associated with any such additional Associated Person(s), Defendants shall provide to FDA an affidavit stating the fact and manner of their compliance with this paragraph, identifying the names, addresses, and positions of all Associated Persons who received a copy of this Order pursuant to this paragraph. Within ten (10) calendar days of receiving a request from FDA for any information or documentation that FDA deems necessary to evaluate Defendants' compliance with this paragraph, Defendants shall provide such information or documentation to FDA.

20. Defendants shall notify FDA in writing at least fifteen (15) calendar days before any change in ownership, name, or character of their business that occurs after entry of this Order, including an incorporation, reorganization, creation of a subsidiary, relocation, dissolution, bankruptcy, assignment, sale, or any other change in the structure or identity of TME, or the sale or assignment of any business assets, such as buildings, equipment, or inventory that may affect obligations arising out of this Order. Defendants shall provide a copy of this Order to any prospective successor or assign at least thirty (30) calendar days prior to any sale or assignment. Defendants shall furnish FDA with an affidavit of compliance with this paragraph no later than ten (10) calendar days prior to such assignment or change in ownership.

21. All notifications, correspondence, and communications to FDA required by the terms of this Order shall be addressed to the District Director, FDA Los Angeles District Office, HFR-PA200, 19701 Fairchild, Irvine, California 92612.

22. Should Defendants fail to comply with the Act, its implementing regulations, or any provision of this Order, including any time frame imposed by this Order, then such Defendants shall pay to the United States of America: five thousand dollars ($5,000) in

liquidated damages for each day such violation continues; an additional sum of one thousand dollars ($1,000) in liquidated damages per day, per violation for each violation of the Act, its implementing regulations, and/or this Order; and a further additional sum in liquidated damages equal to twice the retail value of any distributed drugs or dietary supplements that are adulterated or otherwise in violation of this Order, the Act, or its implementing regulations.  The remedy in this paragraph shall be in addition to any other remedies available to the United States under this Order or the law.

23. Should the United States bring and prevail in a contempt action to enforce the terms of this Order, Defendants shall, in addition to other remedies, reimburse the United States for its attorneys' fees (including overhead), investigational and analytical expenses, expert witness fees, and court costs relating to such contempt proceedings.

24. Defendants shall abide by the decisions of FDA, and FDA's decisions shall be final.  All decisions conferred upon FDA in this Order shall be vested in FDA's discretion and, if contested, shall be reviewed by this Court under the arbitrary and capricious standard set forth in 5 U.S.C. § 706(2)(A).  Review by the Court of any FDA decision rendered pursuant to this Order shall be based exclusively on the written record before FDA at the time the decision was made.  No discovery shall be taken by either party.

25. This Court retains jurisdiction over this action and the parties thereto for the purpose of enforcing and modifying this Order and for the purpose of granting such additional relief as may be necessary or appropriate.

SO ORDERED

DATED this __11th__ day of ___December___, 201_2_.

_____
The Honorable Otis D. Wright
United States District Judge

ORDER GRANTING MOTION FOR PERMANENT INJUNCTION - 15